IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY ANTHONY CADET,<br><br>    *Plaintiff*,<br><br> v.<br><br>THE OWNERS OR BERKS COUNTY JAIL, *et al.*<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 16-02829 |

**PAPPERT, J.**                                   February 15, 2017

## MEMORANDUM

  Plaintiff Jerry Cadet, a *pro se* inmate at Berks County Jail, sued Warden Janine Quigley, C. Deputy Smith, Captain Torres, Christian Leinbach, Kevin Barnhardt, Mark Scott and Sandy Graffius, claiming sleep deprivation and related injury from constant illumination of lights in his cell. Though he does not specify the authority under which he brings his claim, such allegations are analyzed under the Eighth Amendment. Defendants filed a motion to dismiss for failure to state a claim. The Court grants the motion in part and denies it in part.

### I.

  Cadet alleges that the jail keeps the lights on in his cell twenty-four hours a day, seven days a week. (Pl.'s Compl., at 3, ECF No. 5.) According to Cadet, Warden Quigley, C. Deputy Smith and Captain Torres have the authority to order that the lights be turned off at night but refuse to do so. (*Id.*) As a result, Cadet alleges that he suffers a "light-induced suppression of melatonin" and is unable to rest at all. (*Id.*) He states that as of the May 28, 2016 signing of his complaint, the lights had been on since February 13, 2016 and that he was unable to sleep for

several months.  (*Id.*)  He contends that he experienced severe migraine headaches and constant pain throughout his body due to a complete lack of sleep.  (*Id.*)

Cadet allegedly filed, to no avail, several grievances regarding the problem.  (*Id.* at 4.)  He states that "different levels of officers including the Warden" "answered some forms" but "the grievances were never answered."  (*Id.*)  He also claims that "Captain Torres spoke to [him] once and denied [his] request to have the light off sometimes even as [he] sat before him in pain from the situation with the lights."  (*Id.*)

Cadet filed his complaint on July 11, 2016, asserting claims against Quigley, Smith, Torres and "the owners of Berks County Jail."  (ECF No. 5.)  On July 20 Cadet wrote a letter to the Clerk of the Court naming Leinbach, Barnhardt, Scott and Graffius as the jail's purported owners.[1]  (ECF No. 8.)  These individuals were substituted as defendants in the case on July 28.  (ECF No. 9.)  On September 8 Defendants filed their motion to dismiss.  (ECF No. 20.)  After receiving copies of the motion, Cadet wrote to the Court on October 12 stating that it was his understanding that his case had been dismissed and requesting to be reimbursed for the filing fee.  (ECF No. 21.)  On October 21 the Court issued an order clarifying that Cadet's case had not been dismissed and directing Cadet to file a response to the motion to dismiss by November 21.  (ECF No. 22.)

To date, Cadet has not filed any type of responsive pleading nor requested an extension of time in which to do so.  The Court will nevertheless analyze the motion on the merits.  *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (holding that a motion to dismiss under Rule 12(b)(6) should not be granted without an analysis of the merits, notwithstanding local rules regarding unopposed motions, especially where the party is

---

[1]   In their motion papers, the Defendants clarify that Leinbach, Barnhardt and Scott are Berks County Commissioners, while Graffius is the County Controller.  (ECF No. 20, at 1–2.)

not represented); *Ray v. Reed*, 240 F. App'x 455, 456 (3d Cir. 2007) (same); *see also Carter v. Harper*, No. 2:14- 01260, 2015 WL 3485726, at *2–3 (W.D. Pa. June 2, 2015) (analyzing *pro se* complaint on the merits despite plaintiff's failure to file a response); *Malcomb v. Beaver Cty. Pa. (Prothonotary)*, No. 2:13- 1772, 2014 WL 2195410, at *1 (W.D. Pa. May 27, 2014), *aff'd sub nom. Malcomb v. Beaver Cty. Pa. (Prothonotary)*, 616 F. App'x 44 (3d Cir. 2015) (same).

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

Because Cadet filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding that *pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of

whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (quoting *Higgins*, 293 F.3d at 688)).

### III.

Although "the Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). At minimum, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Eighth Amendment also "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (citing *Gregg*, 428 U.S. at 183; *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Not all harms violate the Eighth Amendment, however. *See Farmer*, 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, . . . [it] must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal citations omitted). Proving that one has been deprived of the minimal civilized measures of life's necessities requires proof

that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

Second, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "In prison-condition cases[,] that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "[D]eliberate indifference entails something more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

## A.

Requiring inmates to live in constant illumination may, under certain circumstances, rise to the level of an Eighth Amendment violation. *See Bacon v. Minner*, 229 F. App'x 96, 100 (3d Cir. 2007) (citing *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996) (holding constant illumination so that inmate cannot discern day from night and which causes "grave sleeping problems" and other mental and psychological problems unconstitutional); *see also Sims v. Piazza*, 462 F. App'x 228, 232 (3d Cir. 2012) ("Courts have held that causing inmates to suffer physical and psychological harm by living in constant illumination is without penological justification."); *Sims v. Piazza*, No. 3:09-0033, 2009 WL 3147800, at *8 (M.D. Pa. Sept. 28, 2009), *aff'd in part, vacated in part*, 462 F. App'x 228 (3d Cir. 2012) ("The red light system also deprived Plaintiff of any meaningful measure of sleep, one of life's necessities.").

"However, courts also have concluded that security lights that are similar to night lights and that provide only enough light for officers to conduct nighttime security checks do not impinge on a prisoner's constitutional rights." *Sims*, 462 F. App'x at 232 (citing *Wills v. Terhune*, 404 F. Supp. 2d 1226, 1231 (E.D. Cal. 2005); *King v. Frank*, 371 F. Supp. 2d 977, 985 (W.D. Wis. 2005)). Moreover, continuous lighting at various levels of brightness has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and monitoring. *See, e.g.*, *Gayle v. Harmon*, No. 15-1827, 2016 WL 4802872, at *5 (E.D. Pa. Sept. 13, 2016) (holding constant exposure to two 32-watt bulbs in each bathroom at the ends of corridors for security purposes was not unconstitutional); *McKeithan v. Kerestes*, No. 1:11-1441, 2014 WL 3734569, at *13 (M.D. Pa. July 28, 2014) (holding exposure to 7-watt night light for security purposes was not unconstitutional absent evidence that plaintiff suffered medical problems); *Mable v. Beard*, No. 3:10-1214, 2013 WL 2435295, at *5 (M.D. Pa. June 4, 2013) (same); *Huertas v. Beard*, No. 1:10-10, 2012 WL 6061041, at *18 (W.D. Pa. Dec. 6, 2012), *aff'd sub nom. Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64 (3d Cir. 2013) (holding continuous exposure to 9-watt florescent bulb for security purposes was not unconstitutional); *Brown v. Martinez*, No. 03-2392, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007) (holding constant exposure to 15-watt security night light was not unconstitutional absent evidence that plaintiff suffered grave sleeping conditions or medical problems).

At this stage in the proceedings, however, the Court has no basis upon which to conclude that the "constant illumination" Cadet alleges does not rise to the level of a constitutional violation; the Court must assume that the allegations in the complaint are true and construe the complaint in the light most favorable to Cadet. There is no evidence as to the type and wattage of the bulbs used or the effects it may or may not have had on Cadet's health. *See Spencer v.*

*Wetzel*, No. 3:12-0616, 2012 WL 5247387, at *4–6 (M.D. Pa. Aug. 13, 2012), *report and recommendation adopted*, No. 3:12 -0616, 2012 WL 5249658 (M.D. Pa. Oct. 24, 2012), *aff'd sub nom. Spencer v. Sec'y Dep't of Corr.*, 618 F. App'x 85 (3d Cir. 2015) (holding that dismissal prior to permitting discovery as to the wattage of the bulb, its medical effects and the penological interests served would be improper and noting that analogous cases have only drawn the conclusion that the lighting was not unconstitutional at the summary judgment stage). Cadet's allegations that the illumination is constant, bright enough to prevent him from sleeping and is causing him physical harm are sufficient to state a "sufficiently serious" deprivation. The Court will be able to more fully assess this issue at summary judgment.

**B.**

With respect to the requisite mental state of the officers, "[i]n order for § 1983 liability to be appropriate, '[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207). The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge and acquiescence," and must be pled with particularity. *Id.* Cadet has stated that Warden Quigley, C. Deputy Smith and Captain Torres have the power to order the lights out but refuse to do so. Cadet alleges that he submitted various complaints of which Quigley, Smith and Torres were aware and that he communicated with them regarding the lights and the alleged injuries he is suffering. These allegations are sufficient to raise an inference that these Defendants were personally involved with Cadet's claim and the implementation of the jail's lighting policy. *See Spencer*, 2012 WL 5247387, at *8–9 ("Prior to affording Plaintiff the opportunity to conduct discovery, it is premature to

conclude that none of the remaining Defendants named in Plaintiff's Complaint was personally involved with his Eighth Amendment claim and with implementing the SCI–Frackville policy related to the night light.").

Cadet's allegations are insufficient, however, to raise such an inference with respect to Defendants Leinbach, Barnhardt, Scott and Graffius. In fact, Cadet's complaint does not contain any allegations regarding these Defendants or their involvement with his claim. He does not claim that any of them were aware of either the alleged use of constant lighting or his complaints about the lighting. Moreover, there is no indication that these Defendants—who Cadet believes own the jail—work there or have any contact with individual inmates or corrections officers. Thus, the claims against them will be dismissed based on a lack of sufficient personal involvement in any alleged wrongdoing. *See Mable v. Beard*, No. 3:10-CV-01214, 2012 WL 629396, at *4 (M.D. Pa. Jan. 13, 2012), *report and recommendation adopted*, 3:10-CV-1214, 2012 WL 629431 (M.D. Pa. Feb. 27, 2012) (dismissing claim against medical director due to absence of allegations from which Court could infer that he would be involved in setting the lighting policy or have the authority to change the policy); *Spencer*, 2012 WL 5247387, at *8–9 (dismissing claim against defendant with supervisory capacity over entire state correctional system and little contact with inmates due to lack of personal involvement); *Sims*, 2009 WL 3147800, at *6 (same).

For the reasons stated above, the motion to dismiss is denied with respect to Defendants Quigley, Smith and Torres and granted with respect to Defendants Leinbach, Barnhardt, Scott and Graffius. A plaintiff who fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Alston v. Parker*, 363 F.3d at 235–236; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). However,

based on well-settled law requiring considerable personal involvement, it would be futile to grant Plaintiff leave to amend his pleading as to Defendants Leinbach, Barnhardt, Scott and Graffius. *See Spencer*, 2012 WL 5247387, at *8.  Cadet's claims against these Defendants are therefore dismissed with prejudice.

    An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.