IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY ANTHONY CADET,<br><br>    *Plaintiff*,<br><br>  v.<br><br>THE OWNERS OF BERKS COUNTY JAIL, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 16-02829 |

**PAPPERT, J.**                               October 13, 2017

**<u>MEMORANDUM</u>**

  Plaintiff Jerry Cadet, a *pro se* inmate at Berks County Jail, sued Warden Janine Quigley, C. Deputy Smith, Captain Torres, Christian Leinbach, Kevin Barnhardt, Mark Scott and Sandy Graffius, claiming sleep deprivation and related injury from constant illumination of lights in his cell. Mr. Cadet, a frequent resident of the Berks County Jail, views his time there as a limitless opportunity to file one lawsuit after another, each as frivolous as its predecessor.

  This is the sixth case Cadet has filed for alleged constitutional violations while incarcerated in Berks County. *See Cadet v. The Owners of Berks County Jail, et. al.*, No. 16-cv-03804 (E.D. Pa. July 25, 2016) (dismissing Cadet's complaint as legally frivolous for allegations that prison officials violated his rights under § 1983 by raising the price of telephone calls without giving him advance notice); *Cadet v. Quigley, et. al.*, No. 16-cv-03025 (E.D. Pa. Sept. 6, 2016) (dismissing Cadet's complaint as legally frivolous for allegations that being forced to eat close to an open toilet violated his constitutional rights); *Cadet v. The Owners of the Berks County Jail, et. al.*, No. 16-cv-

03805 (E.D. Pa. Sept. 6, 2016) (dismissing Cadet's complaint because it is duplicative of his claims in civil action number 16-3025); *Cadet v. Quigley, et. al.*, 2017 WL 660849 (E.D. Pa. Feb. 16, 2017) (dismissing Cadet's claim alleging that his Eighth Amendment rights were violated because the "Thursday ham slice" served in prison prevented him from maintaining an adequate diet); *Cadet v. The Owners of Berks County Jail, et. al.*, 2017 WL 660847 (E.D. Pa. Feb. 16, 2017) (dismissing Cadet's claims alleging that his Eighth and Fourteenth Amendment rights were violated because he was allegedly subject to unconstitutional conditions of confinement during a 10-day stay in the disciplinary unit).

Cadet's latest, but undoubtedly not final, misuse of the civil justice system fares no better. Before the Court is Defendants' Motion for Summary Judgment which the Court grants for the reasons that follow.

## I.

Cadet alleges that the jail keeps the lights on in his cell twenty-four hours a day, seven days a week. (Pl.'s Compl., at 3, ECF No. 5.) According to Cadet, Warden Quigley, C. Deputy Smith and Captain Torres have the authority to order that the lights be turned off at night but refuse to do so. (*Id.*) Cadet alleges that as a result, he suffers daily from severe migraine headaches and a "light-induced suppression of melatonin" which impedes his ability to sleep, causing pain throughout his whole body. (*Id.*) He states that as of the May 28, 2016 signing of his complaint, the lights had been on since February 13, 2016 and that he was unable to sleep for several months. (*Id.*)

Cadet allegedly filed, to no avail, several grievances regarding the problem. (*Id.* at 4.) He states that "different levels of officers including the Warden" "answered some

2

forms" but "the grievances were never answered." (*Id.*) He also claims that "Captain Torres spoke to [him] once and denied [his] request to have the light off sometimes even as [he] sat before him in pain from the situation with the lights." (*Id.*)

Cadet filed his complaint on July 11, 2016, asserting claims against Quigley, Smith, Torres and "the owners of Berks County Jail." (ECF No. 5.) On July 20 Cadet wrote a letter to the Clerk of the Court naming Leinbach, Barnhardt, Scott and Graffius as the jail's purported owners.[1] (ECF No. 8.) These individuals were substituted as defendants in the case on July 28, (ECF No. 9), and on February 15, 2017, the Court granted in part the Defendants' motion to dismiss and dismissed Cadet's claims against the jail's "owners" based on a lack of sufficient personal involvement in any alleged wrongdoing. (ECF Nos. 23, 24.) The Court denied the motion to dismiss with respect to Defendants Quigley, Smith, and Torres. (*Id.*) The Court held a Rule 16 Conference on April 4, 2017 which Cadet participated in through videoconference. (ECF No. 30.) Following the conference, the Court issued a scheduling order permitting Defendants to file their motion for summary judgment on or before May 19, 2017. (ECF No. 32.)

Defendants filed their Motion for Summary Judgment and Statement of Uncontested Material Facts on May 17, 2017. (ECF Nos. 33, 34.) The Court held an additional telephone conference on May 30, 2017 to assess Cadet's discovery needs, (ECF No. 38), and ordered the Clerk to refer Cadet's case to the prisoner Civil Rights Panel for a possible appointment of counsel, (ECF No. 39). Cadet sent several responses to Defendants' motion, including letters dated June 27, 2017 and July 27,

---

[1]  Leinbach, Barnhardt and Scott are Berks County Commissioners, while Graffius is the County Controller. (ECF No. 20, at 1–2.)

2017. (ECF. Nos. 44, 47.) Cadet asked the Court to "[p]lease allow [him] just a few weeks [for him to] send in some information from research[] conducted at universities on the negative effects of not only constant exposure to fluorescence light but many more details also." (ECF No. 47.) The Court permitted Cadet to do so and he submitted two letters including an article on lighting in English prisons, Wikipedia research on over-illumination and health effects, a printout from hubpages.com with no author, an article about fluorescent lighting in schools, a brief article on the impact of constant exposure to light on mice, an article about the health effects of fluorescent lights, and four articles on the effect of sleeping with the lights on. (ECF Nos. 52, 53.) Defendants replied. (ECF Nos. 46, 54.) Despite his numerous submissions, Cadet never responded to the Defendants' Statement of Uncontested Material Facts, particularly the information pertaining to the wattage of the bulbs in the prison lights in the Affidavit submitted by Jeffrey Smith, the Chief Deputy Warden at Berks County Jail System.

## II.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to

make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.,* 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (*citing Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976))." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 315 (E.D. Pa. 2009).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

Because Cadet filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding that *pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65

5

(3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (quoting *Higgins*, 293 F.3d at 688)). On a motion for summary judgment, although the court will liberally construe a *pro se* plaintiff's complaint, the plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'" *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (citing *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (citation omitted)).

### III.

Though Cadet does not specify the authority under which he brings his most recent claim, such allegations are analyzed under the Eighth Amendment. Although "the Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). At minimum, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Eighth Amendment also "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "Among 'unnecessary and wanton'

6

inflictions of pain are those that are 'totally without penological justification.'" *Id.* (citing *Gregg*, 428 U.S. at 183; *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Not all harms violate the Eighth Amendment, however. *See Farmer*, 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, . . . [it] must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal citations omitted). This requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

Second, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "In prison-condition cases[,] that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

## A.

### i.

Cadet has produced no evidence that the lighting at the Berks County Jail exceeds constitutional parameters. "[C]ourts [] have concluded that security lights that are similar to night lights and that provide only enough light for officers to conduct nighttime security checks do not impinge on a prisoner's constitutional rights." *Sims v. Piazza*, 462 F. App'x 228, 232 (3d Cir. 2012) (citing *Wills v. Terhune*, 404 F. Supp. 2d

7

1226, 1231 (E.D. Cal. 2005); *King v. Frank*, 371 F. Supp. 2d 977, 985 (W.D. Wis. 2005)). Moreover, continuous lighting at various levels of brightness has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and monitoring. *See, e.g.*, *Gayle v. Harmon*, No. 15-1827, 2016 WL 4802872, at *5 (E.D. Pa. Sept. 13, 2016) (holding constant exposure to two 32-watt bulbs in each bathroom at the ends of corridors for security purposes was not unconstitutional); *McKeithan v. Kerestes*, No. 1:11-1441, 2014 WL 3734569, at *13 (M.D. Pa. July 28, 2014) (holding exposure to 7-watt night light for security purposes was not unconstitutional absent evidence that plaintiff suffered medical problems); *Mable v. Beard*, No. 3:10-1214, 2013 WL 2435295, at *5 (M.D. Pa. June 4, 2013) (same); *Huertas v. Beard*, No. 1:10-10, 2012 WL 6061041, at *18 (W.D. Pa. Dec. 6, 2012), *aff'd sub nom. Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64 (3d Cir. 2013) (holding continuous exposure to 9-watt florescent bulb for security purposes was not unconstitutional).

Here, Berks County Jail "utilizes night lights in cells to ensure safety and security of inmates and staff." (Defs. Statement of Uncontested Facts ¶ 1 (citing Aff. of Chief Deputy Warden Jeffrey Smith).) The lighting used during Cadet's incarceration, between 2300 hours and 0600 hours, were five-to-seven watt fluorescent bulbs. (*Id.* ¶ 3–4.) This level of illumination enables staff to conduct nighttime security checks to ensure inmates are not engaged in dangerous or illicit activities, and enables security and medical personnel to be able to respond in the event of an emergency. (*Id.* ¶ 6–7.) This level of lighting used for this purpose, is constitutional. In fact, Defendants use wattage below what has been held to be constitutional in the Third Circuit. *See*

*Huertas v. Beard*, No. 1:10-10, 2012 WL 6061041, at *18 (W.D. Pa. Dec. 6, 2012), *aff'd sub nom. Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64 (3d Cir. 2013).

### ii.

In response to Defendants' Motion, Cadet argues that "[the Defendants'] focus seems to be on the wattage of the night light bulb" which "only has to do with 6-7 hours of the 24 hour day." (ECF No. 44.) Cadet further argues, without producing any evidence to support his assertion, that "[t]he majority of the day the wattage is extremely intense…This is from 6 a.m.-11 p.m. non[] stop daily." (*Id.*) In a subsequent letter, Cadet argues that Defendants "make it seem as if [he] is complaining solely about the daytime wattage and not the night time combined[.]" (ECF No. 47.) Ultimately, Cadet's claim is that because a light is on "all night and all day" it "inhibits" the release of melatonin which results in severe headaches and pain throughout his body. (ECF No. 47.)

Again, courts have held that continuous lighting at various levels of brightness has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and monitoring. *See Gayle v. Harmon*, No. 15-1827, 2016 WL 4802872, at *5 (E.D. Pa. Sept. 13, 2016) (holding constant exposure to two 32-watt bulbs in each bathroom at the ends of corridors for security purposes was not unconstitutional); *Mable v. Beard*, No. CIV.A. 3:10-1214, 2013 WL 2435295, at *5 (M.D. Pa. June 4, 2013) ("Continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners. *See O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir. 1987)."). Under certain circumstances, courts have held that requiring an inmate

9

to live in constant illumination may rise to the level of an Eight Amendment violation. *See Bacon v. Minner*, 229 F. App'x 96, 100 (3d Cir. 2007) (citing *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996) (holding constant illumination so that inmate cannot discern day from night and which causes "grave sleeping problems" and other mental and psychological problems unconstitutional). Here, there is no evidence that the institution's lighting prevents inmates from discerning whether it is day or night. Berks County Jail uses various levels of brightness. The dim, five to seven watt lights, are turned on during the evening hours, for safety purposes. (Defs. Statement of Uncontested Facts ¶¶ 1–7 (citing Aff. of Chief Deputy Warden Jeffrey Smith).)

Courts also require medical evidence that the lighting caused the alleged harm. In *McKeithan v. Kerestes*, the plaintiff claimed that defendants violated his Eighth Amendment rights "by subjecting him to 24–hour security lighting in the RHU at SCI–Mahanoy." No. 1:11-cv-1441, 2014 WL 3734569, at *11 (M.D. Pa. July 28, 2014). The plaintiff claimed, "with no apparent evidentiary support," that the night light and other illumination caused him to develop memory problems, problems with his vision, and restless sleep. *Id.* The court determined that the plaintiff "failed to demonstrate that he suffered any cognizable injury from the lights" and the defendants were entitled to summary judgment. *Id.* at 2. Similarly, in *Sims v. Piazza*, although the plaintiff attributed his ailments to the red lights that were used, his medical records did not corroborate that the red light was the actual cause of his ailments. 462 F. App'x 228, 233 (3d Cir. 2012).

Here, Cadet alleges that he suffers from "severe migraine headaches on a daily basis, suppression of the production of melatonin, and pain through out [*sic*] [his] whole

10

body from a lack of sleep." (Pl.'s Compl., at 3, ECF No. 5.) Cadet augmented his symptoms in an August 12, 2017 letter. (ECF No. 52.) In it he stated that he would like to add to his lawsuit "hypertension, insomnia, depression, risk of prostate cancer, eating disorder, aggravating my photosensitivity, exposing me to toxic substances and increasing my chance of the combination of any of the symptoms to be a potential cause of death." (*Id.*) Cadet has presented no evidence that the jail's lighting caused any of these purported (albeit creative) maladies.[2]

**B.**

With respect to the requisite mental state, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "In prison-condition cases[,] that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "[T]o survive summary judgment, [the plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time the suit was filed,

---

[2] In his letter submitting his internet research on the effects of lighting on mice as well as humans, (ECF Nos. 52, 53), Cadet states: "As you can see this information Goes [*sic*] into great detail about the type of lights that are being used here at berks county prison." (ECF No. 53.) First, Defendants argue that this research is inadmissible. (Defs. Reply, at 2.) They point out that the articles from the online periodicals and websites are hearsay and the Wikipedia articles are also inadmissible. The first set of articles could possibly be admitted at trial with the proper authentication. *See Vicatulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). The Wikipedia articles would likely not be admitted. *See Jones v. Synthes USA Sales, LLC, et. al.*, 2010 WL 3311840, at *9 (D.N.J. Aug. 19, 2010) ("Since Wikipedia is an on-line encyclopedia which could be written and edited by any internet user, such an article is not grounded in any legitimacy or reliability with regards to scientific authority."). Despite the authentication issue, the first set of articles is not probative of the lighting in Berks County Jail. The articles discuss lighting in English prisons, lighting in schools, and the impact that constant lighting has on mice. Additionally, four articles discuss the effect of sleeping with the lights on, which courts have already held to be constitutionally permissible at the wattages involved here. In any event, Cadet provides no medical evidence that links his headaches, lack of sleep, or any other "potential cause of death" to the jail's lighting.

and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm and that they will continue to so." *Id.* at 846. The Third Circuit, relying on *Farmer*, stated "to defeat the summary judgment motion, [a plaintiff] must present enough evidence to support the inference that the defendants [are] 'knowingly and unreasonably disregard[ing] an objectively intolerable risk of harm.'" *Beers-Capitol v. Whetzel,* 256 F.3d 120, 132 (3d Cir. 2001) (quoting *Farmer,* 511 U.S. at 846).

Once the moving party has shown a lack of evidence supporting the nonmoving party's claim, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Brown v. Martinez*, No. 03-2392, 2007 WL 2225842, at *4 (M.D. Pa. July 31, 2007) (citing *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Additionally, "[u]nsubstantiated arguments made in briefs are not considered evidence of asserted facts." *Brown*, 2007 WL 2225842 at *4 (citing *Versarge v. Township of Clinton,* 984 F.2d 1359, 1370 (3d Cir. 1993)).

Cadet has not presented any evidence to support an inference that the Defendants knowingly and unreasonably disregarded an *objectively intolerable risk* of harm that the lighting allegedly caused him. In his Complaint, Cadet states that he filed grievances complaining of melatonin suppression, migraine headaches, and body pain from lack of sleep that were left unanswered, caused by the light remaining on. (Pl.'s Compl., at 4, ECF No. 5.) Cadet alleges that he submitted various complaints of which Quigley, Smith and Torres were aware and that he communicated with them

regarding the lights and the alleged injuries he is suffering but "[a] lot of the grievances that [he filed] since February and Communication forms were never returned to [him] ironically." (*Id.* at 5.) After discovery, Cadet provides no evidence to support these or any other allegations.

In sum, he has put forth no evidence whatsoever which could present for a jury an issue that the lighting at the Berks County Jail rises to the level of a constitutional violation or that any of his purported symptoms are attributable to that lighting.[3]

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J

---

[3] Because the Court has not found any constitutional violations, the Court need not address the Defendants' qualified immunity argument. (Defs. Mot. for Summ. J., at 7.)